336 N.W.2d 557 (1983)
214 Neb. 825
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Larry R. FRANK, Respondent.
No. 82-368.
Supreme Court of Nebraska.
July 15, 1983.
*558 Dennis G. Carlson, Counsel for Discipline, Lincoln, for relator.
David L. Herzog, P.C., Omaha, for respondent.
KRIVOSHA, C.J., and BOSLAUGH, McCOWN, HASTINGS, CAPORALE, and SHANAHAN, JJ.
PER CURIAM.
This is an original proceeding in which the Nebraska State Bar Association, relator, filed formal charges against Larry R. Frank, respondent, on May 21, 1982. Respondent was admitted to the practice of law in this state on June 25, 1974. The charges alleged a violation of Neb.Rev.Stat. § 7-104 (Reissue 1977), and a violation of DR 1-102, DR 6-101, and DR 7-101 of the Code of Professional Responsibility.
The respondent, who is 35 years old, has been a sole practitioner in Valley, Nebraska, since his admission to practice in 1974. On February 11, 1978, Terry Lewis retained the respondent to probate the estate of Bertha M. Lewis. On March 3, 1978, Terry Lewis was appointed personal representative of the estate. An inventory filed on July 13, 1978, indicated a total estate value of $278,946.
In May 1980, after several inquiries about the delay in completing the probate, Lewis went to the respondent's office at the request of the respondent and signed a document which he was told was a federal estate tax return, form 706. Respondent assured Lewis that the return would be filed promptly and also told him that an extension had been granted by the Internal Revenue Service for filing after the due date. The actual due date for the return was November 10, 1978, 9 months after the date of death.
In July 1980 Lewis received a purported copy of a letter from the respondent to the Internal Revenue Service dated July 7, 1980. The letter inquired as to the approximate date of completion of processing of the estate tax return in the Lewis estate. The evidence shows that no such letter was sent by the respondent.
By early May 1981 Lewis was insisting that respondent close the estate. Respondent sent a letter to Lewis dated May 4, 1981, informing Lewis that the estate was scheduled for closing on June 17, 1981, and that the estate tax payment to the Internal Revenue Service was set for determination and payment on June 10, 1981.
On May 9, 1981, after some investigation, Lewis employed another attorney, John H. Kellogg, Jr., to investigate the delay in closing the estate. Kellogg contacted the respondent and was advised that the estate tax return, form 706, had been filed, and *559 that proper extensions for late filing had been obtained from the Internal Revenue Service.
On May 19, 1981, Lewis went to respondent's office to obtain copies of the return and extensions and was again assured that the return had been filed, but was told that respondent could not find the forms or the letters.
On May 22, 1981, an estate tax return for the Bertha M. Lewis estate was received by the Internal Revenue Service. The return was signed by the respondent as attorney for the estate but was not signed by Lewis as personal representative, and the Internal Revenue Service sent the return back as incomplete.
In late May 1981 Lewis met with respondent and was given a copy of the estate tax return signed by respondent, who advised Lewis that the original had been filed with the Internal Revenue Service. Subsequent investigation established that the Internal Revenue Service had never received any request from the respondent for extensions of the time for filing the estate tax return, form 706. Lewis discharged respondent as attorney for the estate on June 3, 1981, and a federal estate tax return for the estate was finally filed by Kellogg on July 9, 1981.
The estate of Bertha M. Lewis was ordered to pay to the Internal Revenue Service $9,082.58 for failure to file a timely federal estate tax return, and $17,216 in other penalties and interest, for a total sum of $26,298.58.
In December 1981 charges were filed with the Committee on Inquiry of the Second Judicial District. Following hearing before the committee in March 1982 the committee filed formal charges in this court on May 21, 1982, and hearing was had before the referee appointed by the court.
In all the proceedings the respondent has essentially admitted the charges and conceded that he was not honest with Lewis, the Internal Revenue Service, or Kellogg. The representations made to them were clearly false and intentionally misleading.
Meanwhile, the estate of Bertha M. Lewis filed suit against the respondent for professional malpractice based on the facts detailed here. In 1982 respondent and the estate executed a settlement agreement and conditional release of all claims against the respondent for the sum of $17,500. Respondent apparently paid $7,500 and the remaining amount is payable at the rate of approximately $400 per month until paid.
On November 19, 1982, the referee filed his report in this court recommending that the respondent should be publicly reprimanded and placed on probationary status for an indefinite period, with the conditions of probation to be satisfactory completion of the settlement agreement and a showing that respondent has been rehabilitated from the use of alcohol.
By order of the court the parties were directed to brief and argue the case, and the case was submitted to the court following argument.
It is the obligation of this court in disciplinary proceedings to review the evidence de novo to determine if discipline should be imposed and, if it should, the extent thereof. State ex rel. NSBA v. Matt, 213 Neb. 123, 327 N.W.2d 622 (1982).
DR 1-102(A) provides in part: "A lawyer shall not:
....
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
DR 6-101(A) provides: "A lawyer shall not:
"(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
"(2) Handle a legal matter without preparation adequate in the circumstances.
"(3) Neglect a legal matter entrusted to him."
*560 DR 7-101(A) provides in part: "A lawyer shall not intentionally:
....
"(2) Fail to carry out a contract of employment entered into with a client for professional services ....
"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."
The violation of respondent's oath of office and of the disciplinary rules is conceded as charged. The issue is the proper disciplinary sanction to be imposed.
The respondent failed to file a timely federal estate tax return. That error in itself may not have been sufficient to justify disciplinary sanctions. However, when the respondent first realized his mistake in missing the filing date, the return was only 2 months out of time. Instead of informing his client of the error, respondent intentionally embarked upon a program of deception and misrepresentation for a period of approximately 2 years.
On a number of occasions respondent made statements to his client and a fellow attorney, which statements were intentionally false, misleading, and fraudulent. There can be no doubt that respondent's conduct resulted in serious damage to his client, and adversely reflects upon respondent's fitness to practice law. Cumulative acts of misconduct are distinguishable from isolated incidents of neglect and therefore justify more serious sanctions. State ex rel. Nebraska State Bar Association v. Walsh, 206 Neb. 737, 294 N.W.2d 873 (1980).
Deception of a client strikes at the very heart of the oath taken by each person who assumes the position of attorney. We conclude that the respondent should be suspended from the practice of law for a period of 1 year. All costs are taxed to the respondent.
JUDGMENT OF SUSPENSION.
WHITE, J., not participating.